UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| UNITED STATES OF AMERICA | CRIMINAL NO. 06-50078 |
|---|---|
| versus | JUDGE HICKS |
| CORNELL WILLIAMS | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM ORDER**

**Introduction**; **Procedural Background**

Defendant is charged with crimes related to the armed robbery of a local store. The issue before the court is whether the Government may conduct DNA testing on a DNA sample that was taken from a firearm that was found at the crime scene. According to counsel for the Government, in order to perform the DNA analysis and comparison, the lab will need to completely destroy the DNA sample. Counsel for Defendant has objected to the Government's destructive testing of the sample because, after the results are known, Defendant will have no sample remaining that can be tested by his expert, should he retain an expert for that purpose. It is not known whether the crime scene sample to be tested is the only DNA available at the crime scene or from the firearm in question. According to the Government, the crime scene sample was swabbed from the firearm, and it is unknown whether an additional sample could be obtained by further swabbing.

The DNA issue arose formally when the Government filed a Motion to Compel Production of DNA Sample (Doc. 15) on April 19, 2006. The motion asked the court to

order Defendant to submit to an oral swab to obtain his DNA for comparison to that found on the firearm. During a scheduling conference on that date, counsel for Defendant stated he would oppose the Government's motion. Defendant did not file any opposition after several days, so the undersigned issued an order on April 28, 2006 that directed Defendant to file any opposition by May 8, 2006. Doc. 18. Defendant then filed on the deadline a two-page, bare-bones opposition. Doc. 21. The undersigned issued an order on May 10, 2006, granting the Government's motion and ordering Defendant to submit to oral swabbing to obtain his DNA sample. Doc. 22.

On May 11, 2006, the undersigned observed that no speedy trial waiver had been filed by Defendant, as was expected based on the discussions at the April 19, 2006 Scheduling Conference. See Doc. 16. A Telephone Status Conference was held that same day. No resolution of the speedy trial issue could be had, so this case was reassigned to Judge Hicks and the trial date was moved up to June 5, 2006, which is within the Speedy Trial Act limitations. Doc. 23.

On May 16, 2006, counsel for the Government requested a conference with the court and opposing counsel to discuss the DNA testing. It was during a conference on that date that the court and counsel for Defendant learned that the Government would be required to obtain expedited testing of DNA in order to have the results prior to trial and that the expedited testing would result in the total destruction of the DNA sample taken from the crime scene. (Counsel for the Government later advised that the testing would destroy the

sample, even if the testing was not expedited.) The conference was continued to May 18, 2006 to give counsel for both parties an opportunity to provide legal authority on the issue of destructive testing. Despite that opportunity, no authority was provided to the court.

The court then directed the Government to file a motion and brief on the issue by close of business on May 18, 2006. The Government's motion (Doc. 27) was timely filed and includes legal authority to support the Government's position. Defendant was allowed until 2:00 p.m. on May 22 to respond to the motion, but he did not file a timely response.

**Analysis**

The Government cites California v. Trombetta, 104 S.Ct. 2528 (1984), which held that the Constitution does not require that law enforcement agencies preserve breath samples of suspected drunk drivers in order for the results of breath-analysis tests to be admissible. The testing procedure at issue took and tested two samples, but purged the testing chamber with fresh air after the tests, leaving nothing for later testing by the defense. The Court held that the policy did not violate the Constitution. It explained that any duty to preserve evidence must be limited to evidence that might be expected to play a significant role in the suspect's defense. To meet that standard, the evidence must both possess an exculpatory value that is apparent before the evidence is destroyed, and the evidence must be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means. Trombetta, 104 S.Ct. at 2534. Those conditions were not met. The Court has also held that when evidence is merely "potentially useful" rather than exculpatory, the

Government does not deny due process unless the defendant can show bad faith on the part of the government. Illinois v. Fisher, 124 S.Ct. 1200 (2004); Arizona v. Youngblood, 109 S.Ct. 333 (1988).

A number of lower federal and state courts have affirmed convictions or otherwise denied relief, in the absence of a showing of bad faith by the government or exculpatory nature of the evidence that was apparent before destruction, based on complaints that testing of small samples of evidence left nothing for defense testing. See, e.g., U.S. v. Stevens, 935 F.2d 1380 (3d Cir. 1991)(serological test of small semen sample destroyed sample; no relief warranted absent evidence of bad faith); Griffin v. Spratt, 969 F.2d 16 (3d Cir. 1991)(Alito, J.)(government, absent bad faith, not obligated to preserve illegal beverages underlying prison disciplinary charge); Carlson v. State, 945 F.2d 1026, 1029 (8th Cir. 1991)(destruction of entire blood sample during prosecution testing did not violate due process); and Lee v. State, 327 Ark. 692, 942 S.W.2d 231 (Ark. 1997)(test confirmed the presence of blood but consumed the sample; no due process violation absent showing blood spot possessed any exculpatory value before it was destroyed or that the state acted in bad faith).

The Government also cites Garrett v. Lynaugh, 842 F.2d 113 (5th Cir. 1998), in which a state prisoner challenged his conviction for murdering a nun during the course of a rape and burglary. A pathologist tested vaginal contents for the presence of sperm and prostate secretions and found both, but he did not test the samples for the assailant's blood type. The testing process used the entire vaginal contents sample that was recovered from the victim's

body. The convicted defendant sought habeas relief on the grounds that <u>Trombetta</u> required the state to make the blood-type test or preserve enough of the sample for the defendant to conduct the test.

The Fifth Circuit reasoned that Mr. Garrett's reliance on <u>Trombetta</u> was misplaced because "[n]o evidence was destroyed in the <u>Trombetta</u> sense." <u>Garrett</u>, 842 F.2d at 116. The testing completely used the available sample to make the tests that were considered necessary, and there was no evidence (whether or not potentially exculpatory) left for the state to preserve once the test was conducted. The Fifth Circuit explained that <u>Trombetta</u> does not require the Government to conduct its investigation in any particular way or perform tests on raw data in a particular order or perform additional or more comprehensive tests. Habeas relief was denied.

**Conclusion**

The authorities cited by the Government, and the others mentioned above, support the Government's request to conduct DNA testing of the sample taken from the firearm. Defendant has not cited any countervailing authority, so the **Motion to Permit Government Testing of Evidence (Doc. 27) is granted**. The Government has stated in its motion that if Defendant wishes to have an expert present at the testing that is to be conducted at the Northwest Louisiana Crime Laboratory, Defendant may do so, though there will be a need to coordinate the experts' schedules. **Counsel for Defendant is directed to provide the Government written notice at or before the time of the pretrial conference** if he intends

to have an expert present at the analysis. He should also identify that expert as soon as he or she is known. Both parties are directed to act with diligence to schedule and complete the DNA testing so that it does not interfere with the trial setting.

A final comment about Speedy Trial issues will be offered. Neither party has requested a continuance associated with the need to complete DNA testing prior to trial. In the event such a continuance is requested, the undersigned observes that such a delay would likely be excludable from the Speedy Trial calculation under the "ends of justice" provision in 18 U.S.C. § 3161(h)(8)(A). The results of the DNA comparison are important to a determination of Defendant's guilt or innocence. There is no evidence that the Government has been dilatory in attempting to obtain Defendant's DNA sample or comparing that sample to the DNA found at the crime scene. Those circumstances indicate that the delay resulting from any such continuance would be excluded from the computation of the delays allowed under the Speedy Trial Act. See United States v. Drapeau, 978 F.2d 1072 (8th Cir. 1992).

THUS DONE AND SIGNED in Shreveport, Louisiana on May 23, 2006.

_____
MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE